**UNITED STATES of America ex rel. Edward J. WHALEN**

v.

**Saul BOOKBINDER, Warden,**

and

**Edward Hendricks, Head of Philadelphia Prisons.**

**No. M-2520.**

United States District Court E. D. Pennsylvania.

June 23, 1964.

Jerome E. Ornsteen, Philadelphia, Pa., for petitioner.

James C. Crumlish, Jr., Dist. Atty. of Philadelphia County, Arthur Marion, Asst. Dist. Atty., Philadelphia, Pa., for Commonwealth of Pennsylvania.

KRAFT, District Judge.

In this habeas corpus proceeding the relator, Edward J. Whalen, seeks to invalidate his conviction in the State Court of Pennsylvania for armed robbery. He has been ably represented in this proceeding by court-appointed counsel, Jerome E. Ornsteen, Esq. As the sole basis of his claim for relief in this court relator alleges that perjured testimony, falsely identifying him as the robber, was knowingly used by the police and district attorney's staff in procuring his conviction. We have fully examined the records of all proceedings, criminal and habeas corpus, heretofore had in the state courts. From the evidence adduced upon the full hearings had before us, and judging the credibility of the witnesses who appeared before us, we find the following:

FACTS

1. On June 29, 1954, the store of Alfred Mosheim in Philadelphia was robbed by an armed man, who wore dark glasses and whose lower face was concealed by a bandana form of mask, which slipped down as the robber was departing the store.

2. The robbery was investigated by members of several different units of the Philadelphia Police Department. The information obtained by the respective members of each of the different units was not promptly or fully collated or interchanged, so that all the officers involved in the investigation did not have the same knowledge or information.

3. As the robber was leaving the store, Kathleen Walsh, an employee, saw the robber sufficiently to recognize him as a patron of the store, but could not immediately identify him by name. Shortly thereafter, upon consulting the store records and conferring with Alfred Mosheim, she advised Detective Korotkin that the robber was Whalen, the present relator. Later, on June 29th, she identified a photograph of Whalen procured meanwhile by Korotkin at City Hall, which was shown to her with other photographs.

4. Leon Freedman, another store employee, became aware of the robbery on June 29 by the position and actions of his employer, though he could not see the robber at the time. Freedman left, without detection, by a side door to request a nearby taproom proprietor to call police. While standing outside the taproom Freedman saw Whalen emerge from Mosheim's store, paper bag in hand, and the lower portion of his face no longer concealed. He observed Whalen remove a gun from his front waistband and put it in the paper bag. Whalen looked at Freedman and began to run. Freedman pursued Whalen for several blocks without overtaking him. Freedman recognized Whalen as a store patron whose name he could not then recall, but he identified a photograph of Whalen later the same day.

5. Whether Alfred Mosheim saw the robber's face exposed sufficiently to identify him or whether his judgment of identity was influenced by the certainty of the identification of Whalen by Miss Walsh and Freedman is unclear, but, by the end of June 29th, Mosheim firmly believed, in good faith, that he was able to identify Whalen as the robber and subsequently did so.

6. Relator was arrested on July 9, 1954, at the instance of Detective MacCrory, a member of a different police unit, as the result of information furnished by an undisclosed informer.

7. While Whalen was temporarily in custody in a room in City Hall for purposes of interrogation, he remarked, upon seeing Leon Freedman pass an open door in the room, that Freedman had remarkable speed afoot for an older man.

8. Following his arrest relator had a preliminary hearing before a magistrate on July 10, 1954, and a further and final hearing before another magistrate on July 14, 1954. At these hearings relator was represented by counsel of his own selection, the late Garfield Levy, Esq., known to this court to have then been, and stipulated by present counsel to have then been, a well-known lawyer of long and abundant experience in the defense of accused and one possessed of recognized ability. Mr. Levy represented the relator through the subsequent criminal proceedings, including his trial, conviction and sentence.

9. Following relator's indictment the following proceedings took place:

(a) September 7, 1954, scheduled for trial before Flood, J.; continued on application of relator's counsel.

(b) October 27, 1954, trial begun before Crumlish, J., without jury, upon waiver. After partial trial, Crumlish, J. declined to proceed because of his view that trial, despite the waiver, should be to a jury.

(c) November 15, 1954, trial begun before Nelson, J., without jury; trial was not completed for reasons not now apparent.

(d) January 4 and 5, 1955, trial before Levinthal, J., and a jury. Relator was found guilty and thereafter sentenced to a minimum of seven and a half years' and a maximum of fifteen years' imprisonment. No appeal was taken by relator from this conviction.

10. Relator's testimony in the instant proceeding (pp. 114, 115, 118, 121, 122) that on September 7, 1954, following the continuance before Flood, J., Sergeant MacCrory induced or attempted to induce Leon Freedman, Kathleen Walsh and Alfred Mosheim or one or more of them to testify falsely about the relator in the then forthcoming trial was willfully false.

11. On December 1, 1955, relator filed a petition for writ of error coram nobis which was dismissed by Levinthal, J.

12. Relator subsequently filed a petition for writ of habeas corpus in the Court of Common Pleas of Philadelphia County, Pennsylvania, as of No. 633 September Term 1959, which was denied.

13. Denial of relator's petition for writ of habeas corpus was affirmed on appeal by the Pennsylvania Superior Court as of No. 315 October Term 1960 (Com. ex rel. Whalen v. Banmiller, 193 Pa.Super. 554, 165 A.2d 421).

14. The Supreme Court of Pennsylvania affirmed the action of the Superior Court as of No. 225 Miscellaneous Docket 62 (400 Pa. 606, 162 A.2d 383).

15. The Supreme Court of the United States denied relator's petition for writ of certiorari as of No. 438 October Term 1961 (Pennsylvania ex rel. Whalen v. Cavell, 368 U.S. 882, 82 S.Ct. 133, 7 L.Ed.2d 82).

16. Alfred Mosheim did not knowingly testify falsely at the trial of relator in January, 1955, which resulted in relator's conviction.

17. Kathleen Walsh did not testify falsely at relator's trial in January, 1955, which resulted in relator's conviction.

18. Leon Freedman did not testify falsely at relator's trial in January, 1955, which resulted in relator's conviction.

19. Neither the police nor the district attorney's staff used, knowingly or otherwise, any false testimony in the trial of the relator in January, 1955, which resulted in relator's conviction.

20. On February 28, 1957, petitioner's minimum sentence was commuted by the Governor of Pennsylvania on recommendation of the Board of Pardons to eleven months twenty-eight days. One year later petitioner was re-committed as a parole violator and is now serving

his maximum time under the sentence now attacked, which expires May 14, 1972.

## DISCUSSION

Though relator here testified that he informed his attorney, Garfield Levy, Esq., of the alleged incident of September 7th, 1954, to the effect, in substance, that Sergeant MacCrory was then inducing or attempting to induce Leon Freedman, Kathleen Walsh and Alfred Mosheim or one or more of them to testify falsely about the relator in the then forthcoming trial, it is noteworthy that his attorney never raised the question in any form in the aborted trials before Crumlish, J., or Nelson, J., or in the jury trial before Levinthal, J.; nor did the relator, who testified in the trial before Levinthal, J., make mention of the incident now alleged during his testimony. The accusation against MacCrory, and inferentially against Leon Freedman, Kathleen Walsh and Alfred Mosheim, appears to have been first made by relator in a letter to Judge Levinthal after sentence.

While, in the relator's trial on January 4 and 5, 1955, as in many trials where the observations and recollections of human beings are involved, there were apparent discrepancies, inconsistencies or contradictions, these were matters for the consideration of and resolution by the jury under proper instructions from the trial judge. The adequacy of the instructions was not challenged. The jury's resolution of the identity of the robber was adverse to the relator, despite the efforts of his talented counsel. It may well be that the jury was more impressed, as were we, by the relator's intelligence than by his credibility. Despite the relator's flat denial before us of the remark attributed to him by three witnesses in respect of the speed afoot of Freedman, we can not fail to remember the involuntary, fleeting smile upon the relator's face when Freedman testified before us of his pursuit of the robber. Our impression from the relator's expression was that it was an incident well remembered, but best forgotten.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter.

2. The relator exhausted his legal remedies prior to his invocation of the jurisdiction of this court.

3. Relator has failed to establish by competent, credible evidence the sole basis on which he claimed relief.

4. The relief sought by relator should be denied.

## ORDER

Now, June 23rd, 1964, it is ordered that the writ of habeas corpus is discharged, the relator remanded and the prayer of relator's petition for writ of habeas corpus denied.